WHITING, In re    See Case No. 7,991.

WHITING (ADAMS v.).    See Case No. 69.

WHITING (BAKER v.).    See Cases Nos. 786, 787.

## Case No. 17,575.

### WHITING v. BANCROFT.

[1 Story, 560.] [1]

Circuit Court, D. Massachusetts.  Oct. Term, 1841.

CUSTOMS DUTIES—ACT OF 1832 — WORSTED AND WOOLLEN BINDINGS.

The 25th clause of the 2d section of the tariff act of 1832, c. 227 [4 Stat. 590], includes within its terms all bindings, whether they are worsted or woollen.

Assumpsit to recover back money paid to the defendant, the late collector of the customs in Boston, while in office, for duties on goods, asserted to be not liable to the duty. The money was paid under protest. Plea, the general issue.

At the trial, it appeared, that the goods imported by the plaintiff, on which the duties were levied, were "worsted bindings." It was contended by the plaintiff: (1) That these bindings were "worsted stuff goods," in the sense of the tariff act of July 14th, 1832, c. 227, § 2, clause, and also of the tariff act of 1833, c. 55, § 4 [4 Stat. 630], and therefore were not liable to any duty whatsoever, under the 4th section of the act of 1833, c. 55. (2) That, if liable to any duty, they were not liable to the duty of 25 per cent. under the same section and clause, as "bindings," because that clause applies only to woollen and not to worsted bindings; but, at most they were to be deemed non-exempted articles, and liable only to 15 per cent. duty, ad valorem. under the 25th clause of the same section of the act. The court reserved the former question for argument; and the jury found a verdict for the defendant upon the ground, that in the commercial sense, these bindings were not "worsted stuff goods."

C. P. Curtis, for plaintiff.

Franklin Dexter, Dist. Atty.. for the United States.

The argument of C. P. Curtis. for plaintiff. was as follows: The verdict has established. that the merchandise entered by the plaintiff. and on which he was obliged to pay the duties now sought to be recovered back.

---

[3] [From 14 N. B. R. 307.]

[1] [Reported by William W. Story, Esq.]

though composed entirely of worsted, does not fall within the description of "worsted stuff goods." The question, then, is, whether it is liable to 25 per cent. duty under the woollen clause in section 2, art. 2, of the tariff act of 1832, or to 15 per cent. as an unenumerated article.

The plaintiff contends for the latter. The scope of the clause in question is to fix the duties on articles of wool, or of which wool is a component part, and all articles, mentioned therein, are taken to be of that material, except such as are described as being of a different material; such as worsted shawls, worsted yarn, worsted stuff goods, &c. Bindings are found in company with mits, gloves, blankets, hosiery, carpets, carpeting, &c., all of which are woollen goods; some of them, (such as blankets, &c.), are uniformly made of wool, and the others are often of that material. "Noscitur a sociis" is a well founded maxim, applicable to revenue as well as to penal laws. The 7th clause of section 2 of the tariff act of 1828 [4 Stat. 272], shows clearly, that the bindings intended were woollen bindings; and this clause is the predecessor, and almost counterpart of the one under consideration. If then, mits, gloves, bindings, blankets, hosiery, &c. are found to be not composed of wool, they do not come within the provision aforesaid, but fall under some other enumeration, as silk, cotton, leather, &c., or are embraced in the sweeping clause imposing a duty of 15 per cent. on all articles not enumerated or specified. This rule has been applied in this manner in the case of Adams v. Bancroft [Case No. 44], where the collector demanded and received of Adams, on an invoice of silk gloves, duties, at the rate of 25 per cent. on the authority of the 2d article of 2d section, above mentioned, imposing that duty on "gloves." The importer contended, that the material, of which they were composed, took them out of that clause, and that by the act of 1833, they were free; and this was the judgment of the circuit court. The learned judge, in giving the opinion says; "The 2d paragraph of the 2d section of that act (1832) appears to me to refer entirely to goods composed wholly or in part of wool." Now, construing this clause according to the ordinary rules of interpretation of statutes of this sort, it seems to me difficult to maintain, that any other articles were within the scope of the paragraph, than those, which were wholly of wool, or of which wool is a component part.

Now, it was testified by all the witnesses, on each side, that the merchandise in question was composed entirely of worsted; and it is known to the court, that worsted is a distinct article in commerce from wool. It seems clear, then, that these bindings are not subject to the duty claimed and received by the collector, as woollen articles. Bindings are of different materials,—silk, cotton, leather, wool, worsted, and even of gold,—and are subject to different rates of duty, or are free from duty, according to the material, of which they are composed.

There does not appear to be any specified duty for worsted bindings; and we therefore believe, that they fall under the 25th clause of sect. 2d, and are subject to the duty of 15 per cent. only. In that case the plaintiff is entitled to recover back the excess paid by him, with interest.

Franklin Dexter, for the United States.

(1) The 2d article, 2d section, of the tariff act of 1832, the defendant contends, is not the "woollen clause," as distinguished from "worsted," but it is the "woollen and worsted clause." It contains express duties on worsted yarn and woollen yarn, on "worsted stuff goods," and on Brussels and Venetian carpets.

(2) It does not appear, that there are any such things known as woollen bindings.

(3) The argument supposes, that articles named, which may be of wool or worsted, are only covered by this clause, when made of wool. If so, Brussels and Venetian carpeting, (believed to be made of worsted,) would be non-enumerated, which is not probable from the whole purview of the statute.

(4) In the case of Adams v. Bancroft [supra], this clause was called the woollen clause, as distinguished from silk only; the phrase was used diverso intuitu, to bring this case within that. All worsted goods must have been exempted, as all silk goods are, and then worsted bindings would have been free.

(5) "Bindings" mean all bindings, unless otherwise provided for. "Cotton bindings" are provided for in the 3d clause of the 2d section. "Leather bindings," by the 21st clause, &c.

C. P. Curtis, in reply.

(1) The 2d article, 2d section, refers to articles of wool alone, unless otherwise expressly mentioned.

(2) The plaintiff contends, that these are woollen bindings; but if these are not, that will not justify the government in levying the woollen duty on worsted goods.

(3) The plaintiff has no information, whether Brussels and Venetian carpets are of wool or worsted. He believes they are of wool; but he deems it not important; for, of whatever material composed, they are described specifically by the terms, by which they are known in commerce. From their being found in the woollen clause, the presumption would be, that they are of that material.

(4) The plaintiff does not claim, that worsted bindings are free (as they would be, if of silk); but that, there being no specific duty on them, they are embraced in the general clause, including all non-enumerated articles.

STORY, Circuit Justice. The jury having found, that these worsted bindings were not "worsted stuff goods," in the commercial sense of the terms, it follows of course, that

they are not free under the tariff act of 1833, c. 55, § 4, which exempts all "worsted stuff goods" from duty, the prior tariff act of 1832, c. 227, § 2, having imposed a duty upon "worsted stuff goods" of ten per cent. ad valorem. The remaining question, which was reserved at the trial, is, whether these worsted bindings are to be deemed non-enumerated articles, liable to a duty of 15 per cent. ad valorem, under the 25th clause of the 2d section of the tariff act of 1832, c. 227, or are liable to a duty of twenty-five per cent., as being embraced within the 2d clause of the same section, which levies that duty, among other things, on "mits, gloves, bindings, blankets, hosiery," &c. It is impossible fully to comprehend the argument, without a recital of the whole clause. It is in the following words. "Second. On all milled and fulled cloth, known by the name of plains, kerseys, or kendal cottons, of which wool shall be the only material, the value whereof shall not exceed thirty-five cents a square yard, five per centum ad valorem; on worsted stuff goods, shawls, and other manufactures of silk and worsted, ten per centum ad valorem; on worsted yarn, twenty per centum ad valorem; on woollen yarn, four cents per pound, and fifty per centum ad valorem; on mits, gloves, bindings, blankets, hosiery, and carpets and carpeting, twenty-five per centum, except Brussels, Wilton, and treble ingrained carpeting, which shall be at sixty-three cents the square yard, all other ingrained and Venetian carpeting, at thirty-five cents the square yard; and except blankets, the value whereof, at the place from whence exported, shall not exceed seventy-five cents each, the duty to be levied upon which, shall be five per centum ad valorem; on flannels, bockings, and baizes, sixteen cents the square yard; on coach laces, thirty-five per centum; and upon merino shawls made of wool, all other manufactures of wool, or of which wool is a component part, and on ready made clothing, fifty per centum ad valorem." Now the argument turns upon this, that the "bindings" spoken of in this clause, are not all bindings whatsoever, but only such as are woollen bindings, as contradistinguished from worsted bindings.

In examining the clause in question, it is clear, that it applies solely to articles composed in whole or in part of wool, using the latter word in its comprehensive sense, as applicable to the raw material, and not merely to its commercial sense, when incorporated into a particular fabric or manufacture. There is no doubt, that, in a commercial sense, worsted goods are distinguishable from woollen goods; and so accordingly this clause treats them, although wool is a constituent part of all worsted goods; for worsted is but wool, spun and twisted in a particular manner. The point of the argument, therefore, must turn upon this, that the duty on "mits, gloves, and bindings," in this

clause, is not intended to cover all sorts of mits, gloves, and bindings, manufactured out of wool, but only such as would be denominated woollen mits, gloves, and bindings. The argument derives some force from the immediately antecedent article mentioned being "woollen yarn"; and hence the maxim, "Noscitur a sociis," is said to be applicable to it. But in construing the clause, it seems to me, that the whole must be taken together. The first branch of the clause embraces all milled and fulled cloth known by the name of plains, kerseys, and kendal cottons, of which wool is the only material; next, comes worsted stuff goods, &c.; next, worsted yarn; next, woollen yarn; and then, mits, gloves, bindings, blankets, hosiery, and carpets. Now, certainly, in this very connexion, we find goods enumerated, which either are, or at least may be, composed of worsted. No one, I suppose, doubts, that there are, or may be worsted mits, worsted gloves, worsted bindings, and worsted hosiery, as well as woollen; and therefore there is nothing in the language, which necessarily or naturally limits it to the one class, rather than the other. Why, then, should it not be construed to embrace both, since it is found in a clause equally embracing woollen and worsted goods, and there is nothing pointing specially to one in preference to the other? And, indeed, since the language is general, "mits, gloves, bindings, hosiery," &c., why should it not be applied to all mits, all gloves, all bindings, all hosiery, whatever are the component materials, upon the ground of the very maxim, "Noscitur a sociis;" the clause embracing, in all other respects, woollen and worsted goods only, with the single exception of "shawls and other manufactures of silk and worsted," and that very exception being inapplicable here?

The case of Adams v. Bancroft [Case No. 44], turned upon very different considerations, growing out of another distinct clause (the 15th) of the same section. That clause levied a duty of a very different sort upon "all manufactures of silk, or of which silk shall be a component part"; and the court held, that French silk gloves, being a manufacture of silk, could not have been within the purview of the second clause respecting mits and gloves; otherwise it would involve a direct repugnancy between the two clauses of the section. To give full effect to each clause, the court said, that the second clause was applicable solely to mits and gloves, which were wholly or in part composed of wool; and the other clause, to mits and gloves, which were wholly or in part composed of silk. By implication and inference, therefore, the reasoning of the court in that case, would lead us to the conclusion, that the second clause would embrace worsted mits, worsted gloves, and worsted bindings. That point, however, not being then directly before the court, the present case is not necessarily governed by it.

My opinion, upon the best reflection, which I have been able to bestow upon the subject, is, that all bindings, whether woollen or worsted, are within the purview of the second clause; and to construe worsted bindings to be without it, and woollen bindings to be within it, would be, not to interpret the clause upon its general import and the context, but to insert qualifications and limitations, where the act declares none. The motion, therefore, for a new trial upon the reserved point, must be overruled.